**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Wingert and Associates, Inc.,

       Plaintiff,

     v.

Paramount Apparel International, Inc.,

       Defendant.

**MEMORANDUM OPINION**
**AND ORDER**
Civil No. 03-6451 ADM/AJB

_____

David T. Schultz, Esq., and Courtney Rogers Reid, Esq., Halleland Lewis Nilan & Johnson, P.A., Minneapolis, MN, for and on behalf of Plaintiff.

Christopher K. Sandberg, Esq., Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN, for and on behalf of Defendant.

_____

## I. INTRODUCTION

On August 8-11, 2005, a jury trial was held before the undersigned United States District Judge in the above-captioned matter.  Two claims were tried before the jury, both predicated on the Minnesota Sales Representative Act ("MSRA").  The first claim sought damages for profits lost outside the statutory notice period; the second addressed lost commissions during the statutory notice period.  Ultimately, the jury found for Plaintiff Wingert and Associates, Inc. ("Wingert" or "Plaintiff") on both counts, and assessed damages in the amount of $1,049,884.00.  Following the conclusion of the trial, Defendant Paramount Apparel International, Inc. ("Paramount" or "Defendant")  brought a Motion for Judgment As a Matter of Law, To Vacate and Amend Judgment or, In the Alternative For a New Trial [Docket No. 136].  For the reasons set forth herein, this Motion is denied.  Defendant has also filed a Motion to Strike Plaintiff's Response or in the Alternative Consider Defendant's Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Judgment As a Matter of Law, To Vacate and Amend

Judgment or, In the Alternative For a New Trial [Docket No. 147].  This Motion is denied in part and granted in part.

## II.  BACKGROUND[1]

On April 1, 2005, oral argument was heard on Defendant Paramount's Motion for Summary Judgment [Docket No. 24].  In the Motion, Paramount argued that Wingert was not entitled to any relief beyond the net profits it would have earned during the 180-day statutory period set forth in the MSRA.  Wingert maintained the position that it was due gross commissions during the statutory period, as well as damages to its business as allowed by the MSRA.  In denying in part the Defendant's Motion, this Court determined that Wingert would not be limited to seeking net commissions, and evidence concerning additional damages would be allowed.  Order at 11.  At trial, Wingert presented evidence on both of these issues.  The jury awarded Wingert $228,366.00 in lost commissions, which represented the net commissions lost by Wingert during the statutory period, as well as $821,518.00, which represented five years of lost profits to Wingert.

## III. DISCUSSION

### A.    Standard of Review

"If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party."  Fed. R. Civ. P. 50(a)(1).  "[I]f, under governing law, there can be but one

---

[1] The underlying facts have been previously discussed in the summary judgment Order [Docket No. 62] and, of course, are fully amplified by the trial record.  Only facts pertinent to the instant Motions will be discussed here.

reasonable conclusion as to the verdict," judgment as a matter of law may be appropriate.

Chicago Title Ins. Co. v. Resolution Trust Corp., 53 F.3d 899, 904 (8th Cir. 1995).

Under Rule 59, a new trial may be granted "for any of the reasons for which new trials

have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P.

59(a). Even if substantial evidence exists to support a verdict, a trial court may set aside a

verdict on the basis of insufficient evidence. Brown v. Syntex Laboratories, Inc., 755 F.2d 668,

673 (8th Cir. 1985).

**B.      Judgment as a Matter of Law**

Paramount presses two arguments in its Motion for Judgment as a Matter of Law. First,

Paramount contends the MSRA does not allow a damages claim for five years of lost profits.

Second, Paramount avers the MSRA limits damages incurred to lost net commissions during the

statutory period.

**1.      Lost Profits**

Paramount's first argument concerns the five years of lost profits awarded to Wingert by

the jury. Paramount essentially refashions the argument it made in its Motion for Summary

Judgment, arguing that the MSRA does not allow for damages beyond those specifically

identified in the statute in the form of lost commissions. Analogizing the MSRA to employment

case law governing employment at will relationships, Paramount suggests that the intent of the

MSRA was to limit damages to the 180-day statutory period. However, as noted in the summary

judgment Order, the MSRA has been previously interpreted by a Minnesota court to allow

damages beyond commissions lost during the statutory period:

> Moreover, Wingert cites a Minnesota Court of Appeals case that indicates plaintiffs suing
> under the MSRA are not limited to damages in the amount of lost profits. RIO/Bill Blass

> v. Bredeson Assocs., Inc., C6-97-1386, 1998 WL 27299 (Minn. Ct. App. Jan. 27, 1998).
> In Bredeson, plaintiff sued defendant for damages predicated upon the MSRA.  In
> addition to seeking damages incurred during the statutory six month period, plaintiff
> sought to recover lost profits extending beyond the statutory window.  Ultimately, the
> court determined that: "The statute plainly authorizes the payment of commissions that
> are due, as well as damages for breach of the sales representative agreement. Nothing in
> the language of the statute limits commissions due a sales representative under an
> agreement to those earned within the 180-day winding-up period." Id. at *2.

Order at 6.  Relying on the plain language of the statute (Minn. Stat. § 325E.37 provides as a

remedy "reinstatement of the sales representative agreement, or damages") and Bredeson,

Wingert was not limited to commissions lost during the statutory period, but was allowed at trial

to present a claim for damages predicated on the breach of the sales representative agreement.

Here, Paramount presents no arguments to dissuade the Court from this holding.  Plaintiff

convinced the jury that it sustained business losses beyond the lost commissions in the 180-day

statutory period.  This Court believes the jury had the legal authority under the MSRA to so find.

### 2.      Net Commissions

Paramount also contends a violation of the MSRA does not entitle Wingert to the full

15% commission during the statutory period.  Paramount argues that Wingert may only recover

the net commissions it earned following payment to its subagents.  This issue was also addressed

in the Order on Paramount's Motion for Summary Judgment:

> There is no authority to suggest that Wingert is restricted to the recovery of net profits on
> its MSRA claim.  As a result, the plain text of the MSRA will control, which instructs
> that damages are to be calculated according to the sales representative agreement.  Here,
> there is no dispute that the sales agreement called for Paramount to pay Wingert a 15%
> commission on all sales.  As Wingert correctly asserts, its decision to pay a portion of the
> commission to the subagents is not part of the agreement with Paramount, and will not be
> factored into the damages calculation.

Order at 6.  Paramount contends that an award reflecting the full commission to Wingert is

tantamount to treble damages, which the statute does not expressly allow.  Payment of the full

commission to Wingert, however, does not constitute treble damages.  The sales representative agreement between Paramount and Wingert specifically set forth commissions in the amount of 15%.  The sales representative agreement is silent as to what commission Wingert was to pay its subagents.  Wingert maintained separate contractual agreements with its subagents to which Paramount was not a party.  As a result, the commission paid to Wingert's subagents is irrelevant to Paramount's liability for damages to Wingert.

Although the receipt of the full 15% commissions may seem a generous windfall for Wingert, restricting the commissions to 5% would represent an equally generous savings to Paramount.  At trial, the jury was well informed of Paramount's argument for 5% commissions, yet chose to award Wingert 15% commissions.  Additionally, nothing in the MSRA prohibits the award of the full 15% commissions.  Thus, the jury verdict will not be disturbed.

**C.      Motion for a New Trial**

Paramount's motion for a new trial is based on its claims that the verdict rendered was against the weight of the evidence presented, that numerous procedural errors occurred which excluded highly relevant evidence, and finally, that certain rulings allowed false testimony to go unchallenged.

**1.      Weight of the Evidence**

Paramount claims Wingert did not present sufficient evidence to succeed on its claim for lost commissions during the statutory period.  Specifically, Paramount argues that during the statutory period, Wingert was receiving commissions from one of its subagents, Jason Shorba, who was by then representing lines directly for Paramount.  Because Wingert failed to present this evidence, Paramount believes Wingert failed to present substantial credible evidence to the

jury justifying their award to Wingert.  At the trial, Shorba testified as a witness for Wingert.

Paramount cross examined Shorba, but failed to elicit the evidence it now claims would have

prevented Wingert from recovery.  Paramount offers no reason for its failure to proffer this

evidence.  As a result, the Court will not now consider evidence Paramount had available but

failed to proffer at trial.

The weight of the evidence at trial supported the jury's verdict.  Michael Wingert

testified as to Paramount's breach of the sales representative agreement between Wingert and

Paramount, and credible evidence was introduced to demonstrate Wingert's lost commissions

during the statutory period.

### 2.    Procedural Errors

Additionally, Paramount alleges errors during trial excluded relevant admissible

evidence.  Paramount first avers that the admission of a redacted form of a letter from

Paramount's counsel was prejudicial, as it contained proposed settlement figures.  However, a

fair reading of the letter – even with the redacted language – would not have prejudiced

Paramount.  The redacted language in the letter stated: "Please review and advise with respect to

settlement of the claim."  Pl's Trial Ex. 7.  It is not clear from this language alone that the letter

constituted any sort of settlement negotiation.  In any event, with the offending language stricken

from the letter, there is nothing in the letter to indicate any admission of fault on behalf of

Paramount.  As a result, Paramount was not prejudiced by the admission of the letter.

Paramount's next argument concerns the Court's denial of Paramount's attempt to

introduce the expert report of Wingert's witness Arthur Cobb.  Paramount wished to introduce

the portion of Cobb's report describing how he arrived at a figure based on 5% commissions.

Instead, the defense was allowed to fully cross examine Cobb about his commissions

calculations.  It is undisputed that Cobb is not an attorney, and admission of the 5% commission

figures could have prejudiced the jury.  In any event, because Cobb was allowed to testify about

his earlier figures, Paramount suffered no prejudice.

### 3.      False Testimony

Finally, Paramount contends the Court erred in allowing "false testimony to remain

unchallenged before the jury."  Mem. In Support of Def's Renewed Motion for Judgment as a

Matter of Law [Docket No. 137] at 12.  Specifically, Paramount contends it was error for the

Court to restrict testimony contradicting Mr. Wingert's trial testimony that he had no way of

retaining the services of the sales representatives that went to work for Paramount.  Paramount

attempted to introduce evidence that the sales representatives had contracts with Wingert that

contained non-compete clauses that Wingert did not attempt to enforce.  Paramount believes the

exclusion of this evidence violated evidence rules regarding impeachment and substantive

evidence.  However, admission of the existence of the non-compete agreements does not

necessarily impeach Wingert's testimony.  Of greater concern is the prejudicial effect of

admittance of the non-compete agreements to which Paramount was not a party.  Requiring

Wingert to enforce non-compete agreements against its sales representatives would have

required Wingert to sue sales representatives with whom Wingert still maintained relationships

with in the form of the representation of other product lines.  Such action would have created a

nearly untenable position for Wingert, as it would have had to maintain active lawsuits against a

substantial portion of its sales force.  Because the prejudice that would have been occasioned by

the admittance of the non-compete agreements would far outweigh the alleged impeachment

value of the agreements, the Court excluded the agreements.

**D.     Motion to Strike Plaintiff's Response or in the Alternative Consider Plaintiff's Memorandum in Opposition to Defendant's Motion for Judgment As a Matter of Law, To Vacate and Amend Judgment or, In the Alternative For a New Trial**

In addition to its substantive Motion, Paramount makes motion to strike Wingert's opposition memorandum, arguing that the opposition papers were filed outside the period set by the Federal Rules of Civil Procedure.  Whether or not Wingert's memorandum is considered, however, has no bearing on the Court's ruling on Paramount's Motion.  All of the arguments made in the memorandum were a replay of arguments made on the same issues before and during the trial.  There is no showing of any prejudice and there is room for confusion as to when opposition papers were due.  As a matter of completeness, the Motion to Strike will be denied, and Wingert's opposition papers, along with Paramount's reply brief, will be considered.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Judgment As a Matter of Law, To Vacate and Amend Judgment or, In the Alternative For a New Trial [Docket No. 136] is **DENIED**; and

2. Defendant's Motion to Strike Plaintiff's Response or in the Alternative Consider Defendant's Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Judgment As a Matter of Law, To Vacate and Amend Judgment or, In the Alternative For a New Trial [Docket No. 147] is **DENIED** in part and **GRANTED** in part.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


          s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  October 31, 2005.